# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WISCONSIN SHEET METAL
WORKERS HEALTH AND BENEFIT
FUND, MILWAUKEE AREA SHEET
METAL JOURNEYMAN AND
APPRENTICESHIP TRAINING
FUND and MICHAEL MOONEY,

              Plaintiffs,

v.

ZIEN SERVICE INC.,

              Defendant.

Case No. 18-CV-272-JPS

**ORDER**

## 1. INTRODUCTION

Plaintiffs are employee benefit plans (and their trustee). They assert that Defendant has failed to remit contributions to them for its employees' benefits in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1145 ("ERISA"). On November 16, 2018, Plaintiffs filed a motion for partial summary judgment as to various liability issues. (Docket #20). The motion is now fully briefed, and for the reasons stated below, it must be granted in part and denied in part.[1]

---

[1]The Court held a scheduling conference in this matter on April 12, 2018. (Docket #11). The Court thereafter issued a trial scheduling order reflecting the case schedule provided at the conference. (Docket #12). As is relevant here, the Court established a dispositive motion deadline of November 15, 2018, and a trial date of February 19, 2019. *Id.* at 1. During the scheduling conference, Court made it abundantly clear that this matter, like all civil cases, would proceed expeditiously and that the schedule set by the Court was firm.

Nothing was heard from the parties regarding this schedule for the next seven months. On the *day before* the dispositive motion deadline, the parties filed

## 2.  STANDARD OF REVIEW

Federal Rule of Civil Procedure ("FRCP") 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness

---

a joint motion to extend that deadline by two-and-a-half months, and to delay trial until May 2019. (Docket #17). The parties bemoaned that their desire to engage in further discovery and additional settlement discussions was hampered by the approaching deadlines. *Id.* The Court quickly rejected this brazen attempt to flaunt the Court's prerogative.

Plaintiffs thereafter filed their motion for summary judgment on November 16, 2018, one day too late. (Docket #20). At the same time, Plaintiffs sought leave to file their motion out of time (for some unknown reason, they filed two such motions). *See* (Docket #18 and #25). Plaintiffs argued that they had not wanted to work on a dispositive motion to conserve attorneys' fees, and whined that they apparently did not expect the Court to deny their motion to extend the case deadlines. *Id.*

The Court is entirely unmoved by Plaintiffs' assertions. Plaintiffs have had ample time to discuss settlement, as well as prepare dispositive motions, and have been fully aware of the Court's deadlines since April 2018. That they chose to proceed slowly through discovery and settlement talks is no fault of the Court. They have no excuse for putting off their work on these matters until the last possible moment. Nevertheless, in light of the brief delay in filing their summary judgment materials, the Court will grant Plaintiffs' second motion for leave to file their motion out of time. The first such motion will be denied as moot.

credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 3. RELEVANT FACTS[2]

Plaintiffs' motion seeks a number of distinct legal rulings. The Court has organized its factual recitation along those lines. Defendant "is a single-source Mechanical Contractor offering a wide array of in-house services including Plumbing, Heating, Ventilation, Air-Conditioning, Refrigeration, Process Piping, Building Automation Systems and more." (Docket #35 at 9). Plaintiffs are a health and benefit fund and a training fund for the local sheetmetal workers' union, as well as the trustee of the health and benefit fund. (Docket #14 at 2).

### 3.1 The Agreement

In 2002, Defendant became a signatory to the 1999-2003 collective bargaining agreement ("CBA") between Plaintiffs and the Sheetmetal and Air Conditioning Contractors Association of Milwaukee ("Contractors' Association"). The facts of this case relate to work performed in 2016 and 2017, which would be covered by a 2015-2018 CBA. It is undisputed that Defendant never signed the 2015-2018 CBA.

Plaintiffs nevertheless claim that by signing the 1999-2003 CBA, Defendant agreed to be bound by any future CBAs negotiated between Plaintiffs and the Contractors' Association, unless it gave written notice to withdraw from the Contractors' Association. Plaintiffs further assert that

---

[2]In addition to responding to Defendant's statement of additional facts, Plaintiffs have offered a "reply" in support of their own statement of facts. (Docket #35 at 1–9). A reply in support of one's own statement of facts is not permitted under this District's local rules and has been entirely disregarded. *See* Civil L. R. 56(b)(3)(B). Further, both parties' factual briefing is rife with improper legal argument, *see generally* (Docket #35), which has likewise been ignored.

the Contractors' Association's custom is similar; it holds that all employers which are part of the Contractors' Association are bound by the CBAs it negotiates unless they leave the association. Additionally, from 2015 to 2018, Defendant reported to Plaintiffs the hours worked by certain employees, remitted contributions (including contractual increases for such contributions), and paid dues and initiation fees it had deducted from its employees' pay.

### 3.2 The Subject Employees

As noted above, Plaintiffs claim that Defendant failed to pay contributions for employees who were actually performing union work. Defendant claims that it has always attempted in good faith to identify employees performing work covered by the CBAs, including working with the union in this endeavor. Defendant has further instructed its non-union employees to avoid performing covered work. At no time have Plaintiffs provided Defendant with any guidance on their interpretation of the CBAs, including the expansive definition of covered work, that they now present in this lawsuit. Indeed, this lawsuit is the first time since the original CBA was executed that Plaintiffs have complained about Defendant's employees performing covered work. Plaintiffs counter that they were not aware of Defendant's practices complained of in this action.

Plaintiffs use three of Defendant's employees as examples of Defendant's failure to properly remit contributions for covered work (collectively, the "Subject Employees"). The Court discusses each separately.

### 3.2.1 Bloomfield

Taylor Bloomfield ("Bloomfield") joined Plaintiffs' union in February 2017. His union status began as a pre-apprentice, and he did not

become a full apprentice until August 2018. Bloomfield was included in Defendant's list of union employees for March, but not February, 2017. As expected, Defendant made contributions for Bloomfield for March, but not February, 2017. This is evident in Defendant's payroll reports, which list payments to various unions, including to Plaintiffs, as well as categories of employees in "Office," "Sales," and "Labor Non-Union." According to applicable payroll report, Bloomfield's February 2017 hours were listed in the Labor Non-Union category, rather than under Plaintiffs' heading.

Plaintiffs describe Bloomfield's pre-union work as that of a "jobsite employee." (Docket #29 at 5). Plaintiffs claim that this work involved unloading sheetmetal from trucks and carrying it around the jobsite. Defendant claims that Bloomfield's actual work was "truck driving, running for parts, and shop and jobsite cleanup." *Id.* He primarily did menial labor, including cleaning, moving materials around jobsites, and providing materials and tools to Defendant's more skilled workers. By contrast, once Bloomfield joined the union and became an apprentice, he began learning how to work with and install sheetmetal, as opposed to simply carrying it. Plaintiffs do not dispute that Bloomfield's job duties changed significantly when he became an apprentice, though they maintain that even in his earlier role, he was still performing covered work.

### 3.2.2 Wyhoski

Dennis Wyhoski ("Wyhoski") has worked for Defendant in a number of separate stints. The latest began around June 2016. Initially, Wyhoski was hired for general office work and other menial labor. From October 2016 to February 2017, Wyhoski was placed at a Cargill factory to work in its maintenance department. Plaintiffs claim that Wyhoski's work

"consisted of general maintenance on meat processing machines, including lubrication." *Id.* at 7. Defendant agrees that this was his primary role, but adds that he also performed other maintenance tasks, "including washing parts, organizing the shop, putting buckets under leaks, removing plastic from items, and other similar tasks." *Id.* at 7–8. A Cargill representative has testified that ninety percent of Wyhoski's job was to lubricate the either metal or plastic bearings in the meat processing machines. Defendant notes that the union does not offer classes on this type of work. Further, Cargill's representative stated that any of Defendant's employees working in its maintenance department would most often be performing less skilled work or assisting a more skilled mechanic.[3]

Wyhoski had joined the union during a prior period of employment with Defendant and had received his journeyman card. Wyhoski was placed at Cargill to assist him in rejoining the union. Though he was placed at Cargill throughout November 2016, Defendant did not remit any contributions for him for that month. Defendant began making the contributions in February 2017 when Wyhoski rejoined the union. As with Bloomfield, before beginning to make the contributions, Defendant had categorized Wyhoski as Labor Non-Union. Also like Bloomfield, it is undisputed that Wyhoski's job duties changed when he rejoined the union; he went from lubricating bearings to fabricating and installing sheetmetal.

---

[3]Plaintiffs attempt to dispute this characterization of the representative's testimony. (Docket #35 at 16). However, to support their dispute, they cite to pages of the representative's deposition which have not been provided to the Court. *Id.* The Court must, therefore, treat Defendant's characterization as undisputed for purposes of deciding the instant motion.

### 3.2.3 Rombca

John Rombca ("Rombca") was hired in September 2017 to work as a shop manager. Plaintiffs say that Rombca's work included "manufactur[ing] spiral ductwork," as well as handling and delivering sheetmetal from the shop to a jobsite. *Id.* at 9. Defendant states that Rombca's job was to "run the tool room, repair tools, and keep track of inventory," though it admits that he was also tasked with "deliver[ing] tools and other materials to job sites and making spiral." *Id.* Defendant further concedes that Rombca would unload sheetmetal products at the jobsite at the direction of union workers. Rombca was classified as Labor Non-Union during September 2017. Rombca worked 113 hours that month, and his time was variously billed as shop time, time making spiral ductwork, or time billed directly to a jobsite. No remittances were made for Rombca's work in that month.

### 4. ANALYSIS

Plaintiffs present two claims, each under a different subsection of ERISA, but both allege identical unlawful conduct: failure to pay contributions in breach of the CBA. (Docket #14 at 4–5). Plaintiffs do not seek summary judgment as to the entirety of their lawsuit. Instead, they ask the Court to make certain legal rulings, all described by Plaintiffs as being under the umbrella of rulings on liability only. (Docket #21 at 1–2). As presented in Plaintiffs' opening brief, the requests are as follows:

> [T]he Court should rule as a matter of law that Zien violated 29 U.S.C. §1145 by failing to remit to the Plaintiffs for the hours worked by Bloomfield in February of 2017, for the hours worked by Wyhoski at Cargill in November of 2016, and for the hours worked by Rombca in September of 2017. Once the Court has so ruled, at the damages trial the parties can present evidence as to other employees who

performed similar work, and the correct number of hours worked and contributions owed in total for said employees; without relitigating the legal issues that the Court would have already decided on summary judgment.

*Id.* at 12. Unfortunately, Plaintiffs are not careful about the precise scope of and terminology used with the issues upon which they seek judgment; the formulation of the issues in their opening brief is different than that in the reply (and, indeed, even the reply is not internally consistent). *See* (Docket #33 at 3, 15). The Court will confine its analysis to the issues presented in the quoted passage and the other essential legal issues raised by the briefing.

### 4.1 Defendant Is Bound By The 2015-2018 CBA

ERISA requires employers of union workers to, *inter alia*, make contributions to union benefit plans in accordance with the terms of the CBA between the employer and the union. 29 U.S.C. § 1145. Thus, Plaintiffs must initially establish that Defendant is bound to a CBA. Here, the relevant agreement is the 2015-2018 CBA which spans the period of the Collective Employees' work. Plaintiffs can make this showing in two complementary ways. First, Plaintiffs can show that Defendant expressed an "unequivocal intention to be bound" by the actions of the Contractors' Association in negotiating and agreeing to the 2015-2018 CBA. *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 (7th Cir. 1998). Second, Plaintiffs can establish that Defendant has directly agreed to abide by the 2015-2018 CBA by its "conduct manifesting an intention to abide and be bound by the terms of an agreement." *Bricklayers Local 21 of Ill. Apprenticeship and Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 767 (7th Cir. 2004) (quotation omitted).

As to the first theory, Plaintiffs note that Defendant has never withdrawn from the Contractors' Association. As to the second, Defendant has acted in accordance with the CBA by reporting hours worked to Plaintiffs and paying Plaintiffs for contributions and dues owed. Defendant responds that its manifestation of intent to be bound by the CBA is less than unequivocal. This assertion is not supported by evidence, however. Defendant's president avers to the supposed equivocation in a conclusory fashion, without explaining what contrary evidence exists demonstrating a lack of intent to be bound. (Docket #30 ¶ 3). Defendant's brief also questions why Plaintiffs have not supplied further evidence from Defendant itself, in the form of discovery responses, about intention to be bound. (Docket #28 at 16). This too is not actual evidence. In the end, no matter how weak Defendant believes Plaintiffs' evidence to be, it did not supply any to contradict Plaintiffs. Thus, there is nothing for a jury to decide, and Plaintiffs are entitled to a finding that Defendant is bound by the 2015-2018 CBA.

### 4.2 The CBA's Definition of Covered Work Is Not Unenforceably Ambiguous or Vague

Plaintiffs' opening brief assumes, without meaningful analysis, that the Subject Employees performed work covered by the CBA. *See* (Docket #21 at 5, 9, 10). Defendant interjects that the CBA's definition of "covered work" is ambiguous. Plaintiffs' assumption would, therefore, be improper and resolution of the issue would not be appropriate in the context of summary judgment. The definition of "covered work" is as follows:

> This agreement [the 2015-2018 CBA] covers the rates of pay and conditions of employment of all employees of the employer engaged in but not limited to the (a) manufacture, fabrication, assembling, handling, erection, installation,

> dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other materials used in lieu thereof and of all air-veyor systems, exhaust systems and air handling systems regardless of material used including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation and all duct lining; (c) testing and balancing of all air handling equipment and duct work; (d) the preparation of all shop and field sketches used in fabrication and erection including those taken from original architectural and engineering drawings or sketches, regardless of whether they are made by hand, by CAD, or other computer programs, (this does not apply to systems design drawings or sketches), (e) metal roofing and (f) all other work included in the jurisdictional claims of the International Association of Sheet Metal, Air, Rail & Transportation Workers.

(Docket #23-2 at 4–5).

Plaintiffs' arguments are premised on an expansive reading of this provision, in particular its application to any "handling" of "all ferrous or nonferrous metal work and all other materials used in lieu thereof." For example, Plaintiffs contend that because Bloomfield literally touched pieces of metal during his work for Defendant, he performed covered work. (Docket #33 at 9). Defendant contends that when approached this way, the definition of covered work is both vague and unreasonably broad. It believes that covered work was intended to be that which is done by a skilled tradesman. Defendant notes that using Plaintiffs' interpretation, one could say that a worker simply moving a piece of sheetmetal out of his way has "handled" it and thus contributions would need to be made for the hours he worked.

Defendant's argument, while certainly having some practical appeal, must be rejected for two reasons. First, Defendant has not

grounded its position in legal analysis. Interpretation of contracts can be made as a matter of law if the contract is unambiguous. *Indep. Constr. Equip. Builders Union (ICEBU) v. Hyster-Yale Materials Handling, Inc.*, 83 F.3d 930, 932–33 (7th Cir. 1996). If a contract "lends itself to one reasonable interpretation only, it is not ambiguous." *Chi. Reg'l Council of Carpenters Pension Fund v. Schal Bovis, Inc.*, 826 F.3d 397, 406 (7th Cir. 2016). Contract language is unenforceably vague when "the court rather than the parties would have to formulate essential terms." *Brines v. XTRA Corp.*, 304 F.3d 699, 701 (7th Cir. 2002).

Defendant does not meaningfully grapple with these holdings or analogize the CBA in this case to any other which has been found ambiguous, vague, or both. *See* (Docket #28 at 17–20). The Court will not do Defendant's legal research on its behalf. The plain language of the CBA's is neither ambiguous nor vague, but instead extremely broad. If Defendant does not accept this language, it should have negotiated (or instructed the Contractors' Association to negotiate) a better-worded agreement.

The second failing of Defendant's argument is evidentiary, also in two respects. Courts are only permitted to consider extrinsic evidence when a contract's language is ambiguous. *Betz v. Diamond Jim's Auto Sales*, 849 N.W.2d 292, 302 (Wis. 2014). Defendant has not offered evidence on certain relevant points, such as to support its belief that the CBA was only intended to cover skilled trade work. Even the evidence it did offer—such as that of the Cargill representative discussing Wyhoski's job—cannot be considered to vary the plain and unambiguous language of the agreement.

Defendant also supplies evidence on irrelevant matters, such as Plaintiffs' failure to offer an interpretation of the CBA prior to initiating this lawsuit. While perhaps not the most congenial business practice, Defendant has not pointed to any rule of law requiring as much.[4] Indeed, Defendant bears just as much blame as Plaintiffs for the lack of pre-suit guidance; in light of the broad language describing covered work, it behooved Defendant to be exceedingly careful in assigning work and to perhaps be over-inclusive in making union contributions for employees. Similarly, Defendant's good faith belief in its compliance with the CBA is admirable but not helpful in assessing whether the agreement is ambiguous. Though Plaintiffs did not seek summary judgment on whether the CBA's definition of "covered work" is ambiguous or vague, in response to Defendant's argument, the Court finds that it is neither.

### 4.3    The Subject Employees Performed Covered Work

The breadth of the CBA does not by itself establish Plaintiffs' entitlement to contributions for the Subject Employees. Plaintiffs must make a factual showing that each employee was indeed performing covered work. Though the nature of each employee's work is disputed, even viewing the evidence most favorably to Defendant, the Subject Employees were performing covered work. Bloomfield "handled" metalwork by delivering it jobsites and carrying it to the work areas. Wyhoski lubricated plastic bearings, which constitutes "servicing" a

---

[4] Relatedly, Defendant asserts that this lawsuit is motivated by malice. Defendant believes that Plaintiffs are now seeking to strictly enforce the terms of the CBA because Defendant refused to fire one of its employees who had made a misconduct charge against the union. Interestingly, Plaintiffs do not dispute the charge, but simply object to its relevance. (Docket #35 at 17). Their objection is correct, of course, and the Court offers no opinion as to whether Defendant's allegations have merit for any other purpose.

material "used in lieu" of metal. Rombca also "handled" metalwork and in fact "fabricated" spiral ductwork. Though the Subject Employees' job duties may have involved many unskilled tasks, or may have changed when they joined the union, this has no bearing on whether their tasks during the months in question should be considered covered work. Plaintiffs are entitled to a finding that the Subject Employees performed covered work.

### 4.4 Defendant Is Liable for Contributions for All of the Hours Worked by the Subject Employees

The determination that the Subject Employees performed covered work is not the end of the Court's analysis. The next essential question is the extent of Defendant's liability for contributions, when the Subject Employees clearly performed many tasks beyond even the CBA's broad definition of covered work. Plaintiffs address this issue with a discussion of how the Subject Employees should be classified under the CBA. The CBA provides for four possible classifications of workers who perform covered work: journeymen, apprentices, trainees, and warehousemen. Plaintiffs argue that in light of the work they performed, Bloomfield and Wyhoski should be classified as journeymen, and Rombca as a warehousemen. According to Plaintiffs, both classifications entail contributions for *every* hour each employee worked, regardless of whether they were actually doing covered work at any particular time. *See, e.g.*, (Docket #21 at 8) (describing provisions of the CBA which require such contributions).

A finding in Plaintiffs' favor on the classification issue benefits them greatly. It boosts their damages, as they would be entitled to payment for every hour worked by the Subject Employees during the

applicable months. It also streamlines their trial presentation, as they would not need to prove what work the employees were performing at any particular time. Indeed, Plaintiffs admit that they do not know the specific dates or times when the Subject Employees were performing covered work. (Docket #35 at 17).

Defendant calls Plaintiffs' classification argument "absurd" and claims that it is not supported by the CBA. (Docket #28 at 24). To the contrary, it is Defendant's position which is unfounded. Plaintiffs specifically cite provisions of the CBA that require contributions for all hours worked by journeymen and warehousemen. Defendant does not attempt to explain why Plaintiffs' interpretation of those provisions is misplaced. Without meaningful counterargument from Defendant, then, the Court is constrained to find that Plaintiffs have appropriately classified the Subject Employees.

### 4.5 The Court Cannot Find Liability for Unknown Employees

Plaintiffs contend that the Court should find liability for Defendant with respect to the Subject Employees, and thereafter, at a "damages trial," Plaintiffs will "present evidence as to other employees who performed similar work, and the correct number of hours worked and contributions owed in total for said employees[.]" (Docket #21 at 12). The Court is, frankly, perplexed by this request. Whether the Subject Employees performed covered work is, even in Plaintiffs' view, a question of fact. Their position is simply that the facts are so one-sided that the Court can grant them summary judgment on the issue.

To ask that the Court do the same for unknown employees performing allegedly "similar" work, without making any evidentiary showing as to who those employees are and what work they did, is

astounding. This is not a class action, wherein Plaintiffs would prove that Defendant engaged in precisely the same wrongful conduct with numerous individuals. Indeed, the work performed by each of the Subject Employees is quite different. Thus, it would be impossible for the Court to extrapolate the CBA's coverage from one Subject Employee to the next, much less between that group and the unnamed employees. The Court must, therefore, deny Plaintiffs' request for a favorable liability finding as to the other, unidentified employees.

## 5. CONCLUSION

Plaintiffs' motion for summary judgment is riddled with imprecision and inconsistencies which made the Court's task in addressing their arguments unnecessarily difficult. They have nevertheless shown entitlement to findings that Defendant is bound by the 2015-2018 CBA, that the CBA's "covered work" provision is not ambiguous or vague, that the Subject Employees' performed "covered work," and that those employees are appropriately classified as journeymen or warehousemen, respectively, pursuant to the CBA. All other issues remaining in this case must be presented to the jury at trial. The Court will also grant Plaintiffs' unopposed motion to seal certain exhibits attached to its summary judgment submissions. (Docket #19).

Accordingly,

**IT IS ORDERED** that Plaintiffs' second motion for an extension of the dispositive motion deadline (Docket #25) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' first motion for an extension of the dispositive motion deadline (Docket #18) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiffs' motion to seal (Docket #19) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment (Docket #20) be and the same is hereby **GRANTED in part** and **DENIED in part** in accordance with the terms of this Order.

Dated at Milwaukee, Wisconsin, this 3rd day of January, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge